UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF
WISCONSIN **MILWAUKEE DIVISION**

DAWN MALAJ,

    Plaintiff,

v.

QUALITY THERAPY & CONSULTATION, INC.   JURY TRIAL DEMANDED

  and

RENEWAL REHAB, LLC.,

    Defendants.

# COMPLAINT

## PRELIMINARY STATEMENT

1.    Plaintiff Dawn Malaj ("Plaintiff") brings this action against her former employers, Quality Therapy & Consultation, Inc. ("QTC") and Renewal Rehab, LLC. ("RR") for violations of the Fair Labor Standards Act of 1938, as amended ("FLSA"), Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 USC § 12101, et seq., Wisconsin wage and hour laws, and the Wisconsin Fair Employment Act ("WFEA"). By and through their policies and practices, QTC improperly classified Plaintiff as a "salaried exempt" employee because it took away her Paid Time Off ("PTO") hours to adjust for any hours below eight ("8") worked on a given day, and banked her overtime hours as "banked PTO". In addition, QTC and RR unlawfully retaliated against Plaintiff after she complained that she was not being treated as

salaried by (i) reducing her hours per week from forty ("40") to thirty ("30"), (ii) changing her classification to "hourly exempt", which is not a permissible classification, (iii) denying her reasonable accommodation request to be off for surgery when no undue hardship would be posed in violation of ADA and then, (iv) writing her up for insubordination one day after returning from surgery; furthermore, (v) QTC collaborated with RR to further retaliate when RR chose to retract its offer letter for a pretextual reason after RR had taken over QTC, and transitioned over the same area director Plaintiff had been complaining to at QTC.

2. Plaintiff brings this action pursuant to the FLSA and ADA for purposes of obtaining relief for unpaid overtime compensation, unpaid wages, back pay, liquidated damages, costs, attorneys' fees, injunctive relief, and/or any such other relief that the Court may deem appropriate. In addition, Dawn Malaj brings this action pursuant to Wisconsin wage and hour laws and WFEA for purposes of obtaining relief for unpaid overtime compensation, unpaid wages, back pay, liquidated damages, costs, attorneys' fees, declaratory and/or injunctive relief, and/or any such other relief that the Court may deem appropriate.

## JURISDICTION AND VENUE

3. The Court has original jurisdiction to hear this Complaint and to adjudicate the claims stated herein under 28 U.S.C. § 1331, this action being brought under the FLSA, 29 U.S.C. §§ 201 et seq. and the ADA, 42 USC § 12101, et seq.

4. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as they are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) in the U.S. District Court for the Eastern District of Wisconsin because a substantial part of the events giving rise to the claims occurred within the District and Defendants have substantial and systematic contacts in this District.

## PARTIES

6. Defendant RR is an Illinois Limited Liability Company with an office in Milwaukee, Wisconsin.

7. Defendant QTC is an Illinois Limited Liability Company that ran an office in Milwaukee, Wisconsin during all times materially at issue for purposes of the complaint.

8. Joinder of Defendants is proper pursuant to Fed. R. Civ. P. 20(a)(2) because Plaintiff's rights to relief are asserted against Defendants arising out of the same serious of occurrences and common questions of law and fact.

9. Defendants RR and QTC are joint employers, particularly from the time that QTC's area director, Darla Roach, became area director for RR during RR's buyout of QTC.

10. Plaintiff Dawn Malaj ("Plaintiff" or "Dawn") is an adult resident of Oak Creek, Wisconsin

## GENERAL ALLEGATIONS

11. Dawn is a former employee of QTC, hired in the position of occupational therapist ("OT") on April 11, 2016 in a salaried-exempt position based on an annual earning of $76,960, and paid $2,960 bi-weekly.

12. On June 28, 2016, Dawn sent an email complaining that she was actually a non-exempt and hourly employee, since her PTO was spent for remaining hours under 80 when she would work fewer than 80 hours in a given two-week period.

13. The payroll department responded on June 28, 2016 that Dawn was salaried and exempt but that PTO accrues automatically under 80 hours.

14. After some back and forth emails, Dawn would ultimately ask in an exasperated email, "how am I classified as salary if I don't get salary after PTO is gone?"

15. The next day, at 12:55PM, QTC responded that it was "more of an hourly position."

16. Approximately three months later, on September 23, 2016, Dawn was put into a "new position", which was really the same position but with fewer hours (now 60 hours instead of 80), and the new position was classified as hourly-exempt – at $37 per hour.

17. In response, on September 29, 2016, Dawn emailed QTC asking whether any hours worked over 30 per week would be paid or treated as banked PTO at $37 per hour.

18. Human Resources for QTC responded on the same day that the new position was in fact considered "hourly exempt", so hours between 60 and 80 on a two week basis would be earned at $37 per hour, but hours over 80 would be earned as banked PTO hours at $37 per hour.

19. Dawn would then ask what would happen if she was assigned fewer than 30 hours per week to which QTC confirmed that Dawn would be terminated if she worked fewer than 30 hours per week and had no banked PTO hours remaining.

20. On October 26, 2016, Dawn sent an email to QTC requesting a reasonable accommodation to miss two weeks for surgery and post-operative recovery from November 10th to November 25th, 2016.

21. On October 28, 2016, QTC's Human Resources Department responded via email that to allow Dawn to miss work in November would pose an undue hardship and that she had no banked PTO hours, so she would be terminated if she missed.

22. QTC had permitted a co-worker of Dawn's, Rene Rillorta, to miss two weeks of work less than a month before Dawn's request for a vacation to Italy – he was gone from September 22nd to October 4th, 2016 and had only 2.27 banked PTO hours at the time. Rene Rillorta was not told he

would be in danger of losing his job if he left or that it would pose any hardship. He was paid for 8.6 hours for the time he missed despite having only 2.27 hours banked.

23. Also on October 28, 2016, Dawn requested PTO reimbursement for approximately 51 hours that were unpaid. Ultimately, QTC refused to pay on the basis that it was too far back to review discrepancies in pay.

24. On November 18, 2016, Dawn was written up for not completing evaluations and "unprofessional behavior" when she was called in to report for one ("1") minute of work, 1 day after her surgery.

25. At around the same time, the area director Dawn had been complaining to about salary and exemption practices, Darla Roach, became area director for RR, which was in the process of taking over the QTC location.

26. At some point at the end of 2016 or beginning of 2017, RR offered Dawn a position as OT at $37 per hour (same terms as at QTC), set to start on February 1, 2017. Dawn did accept that offer, which RR's letter to Dawn in early 2017 acknowledged.

27. Amanda Allard ("Amanda") asked Dawn in the middle of January why Dawn hadn't signed the formal contract to work for RR to which Dawn responded that she hadn't received it. Amanda then indicated she would follow up with Del. After speaking with Del, Amanda called Dawn back and said that Darla Roach told Del there was insufficient staffing needs

and rescinded its offer of employment. Shortly thereafter, RR would hire not one but two OTs. Dawn was not offered the position again before RR would hire two other OTs.

### FIRST CLAIM FOR RELIEF
Violations of the Fair Labor Standards Act and Wisconsin Pay Practices –
Improper Salary Practices and Underpayment of PTO

28. Plaintiff reasserts and incorporates by reference all previous paragraphs as if they were set forth herein.

29. Between approximately April 11, 2016 through February 1, 2017, Plaintiff was entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201 et seq. and Wisconsin statutes governing salary practices.

30. Between approximately April 11, 2016 through February 1, 2017, Defendants were employers within the meaning of the FLSA, 29 U.S.C. § 203 et seq. as well as per the Wisconsin Statutes.

31. Plaintiff is a victim of Defendants' improper salary practices in that Plaintiff was not paid her salary in weeks in which QTC assigned less work to her than 40 in a given work-week. And, Plaintiff had her PTO hours stripped from her because QTC did not assign her sufficient work in a given work-week.

32. Plaintiff was not paid all of her PTO hours, and - when she complained that she had not been paid all PTO hours – QTC said it couldn't look back so far to reconcile underpayment, which is inaccurate as the

statute of limitations for a wage claim had not run either under FLSA or under relevant Wisconsin law governing wages.

33. Defendants' failure to properly compensate Plaintiff her full salary and strip her of her PTO was willfully perpetrated, particularly as it worsened after she complained. As Defendants have not acted in good faith, Plaintiff is entitled to liquidated damages in an amount equal to the salary Plaintiff should have been paid that she never was paid. In the alternative, if the court finds violations to not be willful, Defendants shall be liable to pay prejudgment interest at the applicable legal rate.

34. Successful Plaintiff is entitled to reimbursement of the costs and attorneys' fees expended in successfully prosecuting an action under FLSA.

## SECOND CLAIM FOR RELIEF
Violations of Fair Labor Standards Act and Wisconsin Statutes – Improper Classification of Employee

35. Plaintiff reasserts and incorporates by reference all previous paragraphs as if they were set forth herein.

36. Plaintiff was reclassified as an exempt hourly employee after complaining that the salary was not being paid according to the law and that the PTO was being stripped illegally. Exempt hourly is not a legal exempt classification under FLSA or Wisconsin Statutes.

37. As Defendants have not acted in good faith, Plaintiff is entitled

to liquidated damages in an amount equal to the salary Plaintiff should have been paid that she never was paid. In the alternative, if the court finds violations to not be willful, Defendants shall be liable to pay prejudgment interest at the applicable legal rate.

38. Successful Plaintiff is entitled to reimbursement of the costs and attorneys' fees expended in successfully prosecuting an action under FLSA.

### THIRD CLAIM FOR RELIEF
Violation of Fair Labor Standards Act – Retaliation for Complaining of Illegal Practices

39. Plaintiff reasserts and incorporates by reference all previous paragraphs as if they were set forth herein.

40. In retaliation for Plaintiff complaining about salary practices in June of 2016, QTC reduced her hours to 60 per pay period in September of 2016 and classified her new position as hourly exempt (illegal classification).

41. In retaliation for Plaintiff complaining about salary practices in June of 2016, QTC denied Plaintiff a reasonable ADA accommodation to miss two weeks from work to recover from surgery in October 2016 when it had only a few weeks before willingly allowed a co-worker to miss two weeks for a vacation in Italy.

42. In retaliation for Plaintiff complaining about salary practices in June of 2016, QTC wrote up Plaintiff one day after she returned from

surgery.

43. In retaliation for Plaintiff complaining about salary practices in June of 2016, QTC and RR joined forces to withdraw RR's offer of employment in the OT position through QTC's former area manager to whom Plaintiff had previously complained and who had become RR's area manager.

44. Plaintiff's written complaints concerning pay practices and salary-related and PTO-related FLSA violations constituted a protected activity under the FLSA.

45. Plaintiff's offer of employment was withdrawn because of her complaints to Defendants.

46. Defendants' act of withdrawing its offer, writing up Plaintiff, refusing to accommodate Plaintiff's surgery, and reducing hours and changing of employment classification were unlawful acts of retaliation in response to Plaintiff asserting her rights under the FLSA.

47. Plaintiff suffered economic damages in loss of wages as a result of the unlawful termination/withdrawal of her employment offer with RR, reduction of hours, and stripping of banked PTO hours.

48. Plaintiff also suffered emotional distress arising out of her loss of income.

## FOURTH CLAIM FOR RELIEF
Violation of Americans with Disabilities Act and WFEA – Failure to

Accommodate Disability and Disability Discrimination

49. Plaintiff reasserts and incorporates by reference all previous paragraphs as if they were set forth herein.

50. Plaintiff reasonably requested two weeks off for surgery treatment and recovery in October of 2016, and clarified she considered the request to be an ADA accommodation request. At the time, a medical excuse was provided to QTC. This request was made just after a co-worker was returning from a two-week vacation from Italy.

51. QTC erroneously claimed that to allow an OT to take a two week period away from work would constitute an undue hardship when it had just permitted a PT – a harder position to fill – to take a two week vacation.

52. No data or other justification was provided before denying the accommodation. And, Plaintiff was never consulted as to other possible accommodations that might address her situation.

53. QTC's failure to consider the true impact of Plaintiff's requested accommodation on its operations, refusal to consult with Plaintiff before denying her request and to grant the same request to a co-worker to take a vacation, were violations of ADA and WFEA – even if it was only perceived by QTC to be a protected requested and the court finds that it only is protected under ADA or WFEA or neither.

54. Plaintiff suffered emotional damages and a more painful

recovery as a result of QTC's failure/refusal to accommodate her.

55.     Plaintiff received the 90 day right to sue letter for her ADA/WFEA complaint(s) on December 26, 2017.

REQUEST FOR RELIEF

WHEREFORE, it is respectfully prayed that this court grant the following relief:

a) An Order, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, declaring Defendants' actions as described in the Complaint as unlawful and in violation of Wisconsin Law and applicable regulations and as dilatory or otherwise unjust as defined by Wisconsin Law;

b) An Order finding that Defendants violated the FLSA, WFEA, ADA and Wisconsin wage and hour laws;

c) An Order finding that Defendants' violations of law were dilatory or otherwise unjust;

d) An Order finding that Defendants violated the FLSA's anti- retaliation provisions as set forth in 29 U.S.C. § 215(a)(3);

e) Judgment against Defendants in the amount equal to the Plaintiff's unpaid wages at the applicable agreed upon rates and overtime rates for all time spent performing work for which Plaintiff was not paid pursuant to the rate mandated by the FLSA and/or Wisconsin law;

f) Judgment against Defendants in the amount equal to Plaintiff's lost wages in back pay and front pay;

g) An award of compensatory damages in an amount that the Court deems just and reasonable for Defendants' violations of 29 U.S.C.§ 215(a)(3);

h) An award of punitive damages in an amount that the Court deems just and reasonable for Defendants' violations of 29 U.S.C.

§ 215(a)(3);

i) An award in the amount of all liquidated damages and civil penalties as provided under the FLSA and Wisconsin law;

j) An award in the amount of all costs and attorneys' fees incurred in the course of prosecuting these claims as well as pre-judgment and post-judgment interest; and

k) Such other relief as the Court deems just and equitable.

DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial pursuant to FED. R. CIV. P. 38(b).

Dated this 26th day of March, 2018.

    Respectfully submitted,

    s/ Maxwell C Livingston
    Maxwell C Livingston SBN 1084764
    Law Offices of Maxwell Charles Livingston,
    200 S Exec Dr., Ste 101
    Brookfield WI 53005
    Telephone: (262) 789-2741
    Fax: (866) 433-4321
    Email: max@maxlivingstonlaw.com